Filed 7/12/24  P. v. Norcutt CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

    Plaintiff and Respondent,

v.

JAMIE MARION PATRICIA NORCUTT,

    Defendant and Appellant.

E082649

(Super.Ct.No. SWF2102068)

OPINION

APPEAL from the Superior Court of Riverside County.  F. Paul Dickerson III, Judge.  Affirmed.

Andrea S. Bitar, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Defendant and appellant Jamie Marion Patricia Norcutt appeals from a final judgment following a jury trial. For the reasons set forth *post*, we affirm.

## STATEMENT OF THE CASE

On October 6, 2022, an information charged defendant with infliction of corporal injury resulting in a traumatic condition upon a present or former spouse or cohabitant under Penal Code[1] section 273.5, subdivision (a), a felony (count 1); assault likely to produce great bodily injury under section 245, subdivision (a)(4), a felony (count 2); and making criminal threats under section 422, a felony (count 3).

On September 28, 2023, a trial by jury commenced. On October 12, 2023, defense counsel moved for a judgment of acquittal under section 1118.1. Defense counsel stated: "Your Honor, at this time I would make an [*sic*] 1118 motion as to all three counts." The prosecutor opposed the motion, stating: "I believe there's enough evidence to move forward for the jury to decide all counts." After the prosecutor set forth the specific evidence regarding each count, the trial court denied the motion. The court stated: "The Court has heard the evidence. And after listening to arguments, Counsel, the Court feels that there is more than enough evidence to allow the jury to make the decision on all three counts, and your 1118 motion is denied."

On October 17, 2023, the jury found defendant guilty of count 1 under section 273.5, subdivision (a), and count 2 under section 245, subdivision (a)(4). The jury, however, found defendant not guilty on count 3 under section 422.

---

[1] All statutory references are to the Penal Code unless otherwise specified.

At the sentencing hearing on November 17, 2023, the trial court sentenced defendant to probation for three years, with commitment to the custody of the Riverside County Sheriff for 360 days. The court awarded 68 custody credit days for a total custody time of 292 days.

On November 21, 2023, defendant filed a timely notice of appeal.

## STATEMENT OF FACTS

A.    <u>PROSECUTION EVIDENCE</u>

Defendant and the victim were involved in a romantic relationship for over 10 years. They moved in together after dating for one year. Around July 2021, the couple broke up but continued living together. The victim began sleeping on the couch.

On the morning of September 19, 2021, the victim woke up from sleeping on the couch; she saw defendant take the victim's phone. When the victim asked defendant to return the phone, defendant denied taking it. Around 11:00 a.m., the victim went to get food at a fast food restaurant while defendant stayed home. When the victim returned, she noticed that defendant was not home because defendant's truck was gone. The victim put her food on the table and sat down in the chair to eat. While the victim was eating, defendant entered through the front door and yelled, "'You think I wouldn't find out?' or something like that." Defendant asked the victim about photos defendant found on the victim's phone. The victim responded, "'That's none of your business. We're not together. Give me my phone back.'"

The victim recalled that defendant "had a belt in her hand, and she smacked it on [the victim's] food, and [her] fries went everywhere." Thereafter, while the victim was sitting in her chair, defendant hit the victim with the belt "[a] couple times before [defendant] threw [the victim] down." The victim tried to block the belt with her hands and asked defendant to stop. Defendant also hit the victim repeatedly and choked the victim; the victim threw up as a result. At some point, defendant grabbed the victim by her hair and threw her down to the ground. While the victim was on the ground, defendant continued whipping the victim with the belt. The victim believed she was whipped at least 30 times.

As the victim was pinned down, she dug her nails into defendant's forearm and tried to kick her. The victim testified that defendant threatened her during the struggle, saying either "'I'm going to end you,'" "'You're going to die,'" or "'I'm going to kill you.'" The victim was afraid for her life. At some point, defendant took the victim's clothes off, including her bra and underwear. Defendant also asked the victim to cut her nails off because the victim "was digging them [in] when [she] was trying to protect [herself]." The victim complied and cut her nails. When the prosecutor asked why, the victim stated: "I was complying. I was—I figured I wasn't going to be getting strangled if I was cutting my nails off."

The victim testified that defendant also demanded that the victim cut off her hair. While the victim "was going there, and then there was a knock at the door," and she ran towards the back door. The victim stated that "as soon as the knock happened,

4

[the victim] pretended to comply. . . . [¶] . . . [¶] And then, as [defendant] proceeded to go towards the front door, I ran as fast as I could towards the backdoor." When the victim got outside, she screamed for help; she was naked. A deputy arrived.

The victim stated that although she dug her nails into defendant's forearm while the victim was being strangled, she could not do anything else because she was "pinned down." The victim testified that she did not see defendant bleeding at any point. However, when defendant came outside, the victim saw blood on defendant's arm.

Deputy Vanessa Day was on patrol on September 19, 2021. She and Deputy Hernandez arrived at the home of defendant and the victim. Deputy Day heard noises and knocked on the door but there was no response. The deputy then heard screaming from the backyard. Both deputies followed the noise. Deputy Day saw the victim crying, naked, and with marks on her body.

Deputy Day also heard defendant's voice. She saw defendant step into the backyard and then back into the house. Deputy Day could not see defendant's left arm at first. When defendant came back, she had a towel pressed to her left arm.

The deputies separated defendant and the victim. At this time, defendant was not in custody. They "were trying to determine what was going on." Defendant told Deputy Day that "she got cut. And that if she was to press charges, I wanted to press charges. . . . [¶] . . . [¶] . . . [Defendant] implied the other party had cut her." Defendant, however, would not provide Deputy Day with details regarding her cut. The deputy testified that she saw blood on defendant's pants and the left side of her shirt.

5

When Deputy Day interviewed the victim, "[s]he was crying. She was scared." When the deputy asked the victim something, the victim "would start crying." The deputy testified that she did not find any blood on the victim when the deputy made her first contact with the victim.

When Deputy Day went inside the house, she found a belt in the hallway. The deputy also saw a blood trail starting from the kitchen sink going to the desk in the living room. Deputy Day did not see blood on the victim's clothes. The deputy also found fingernail clippings and vomit.

Carolyn Clark, a forensic nurse expert, testified. Clark opined that the victim showed signs of strangulation by hands around her neck.

B.     DEFENSE EVIDENCE

Defendant testified that she and the victim had broken up at the time of the incident on September 19, 2021. Defendant, however, stated that "after this incident, there was a moment when we were going to rekindle the relationship."

Defendant testified that around the time of the incident, she "had an infection called Helicobacter pylori." While she was being treated, she lost 70 to 90 pounds and "was continuously vomiting." Defendant stated that she was "extraordinarily weak at the time," and felt sick all the time.

Defendant testified that she did not take the victim's phone on the day of the incident or prior. Defendant stated that the victim had looked at defendant's phone and found texts indicating that defendant was romantically interested in someone else.

6

On September 19, 2021, defendant remembered leaving the house around 11:00 a.m., before the victim left. Defendant returned around noon and saw the victim eating at the kitchen table. The two of them argued about who would wait for the plumber. Defendant testified that the victim started to throw small objects off the dining table at defendant and hit her with some of them. The victim attacked defendant with a chair.

Defendant testified that she noticed that her arm had been cut by the victim. Defendant believed that scissors were used to make the cut. Although the cut did not bleed right away, when the blood started flowing, the victim got defendant a towel. Defendant went on to testify that the victim tackled defendant and hit her numerous times on the chest and ribs. Defendant took pictures of the bruise on her shoulder several days later.

Defendant testified that she did not remember choking the victim but admitted hitting the victim with a belt to defend herself. Defendant denied stating that she would "end" or kill the victim. When defendant heard a few knocks on the front door, the victim ran out to the backyard, screaming for help. Defendant told the deputy she thought the victim cut her with scissors.

## DISCUSSION

After defendant appealed, and upon her request, this court appointed counsel to represent her. Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738 (*Anders*) setting forth a

statement of the case, a summary of the facts, and potential arguable issues, and has requested this court to undertake a review of the entire record. Pursuant to *Anders*, counsel identified the following issues to assist the court in its search of the record for error: "Should the trial court have granted defense counsel's section 1118.1 motion to dismiss at the close of the prosecution's case?" (All caps omitted.)

After counsel filed a brief under *Wende*, we offered defendant an opportunity file a personal supplement brief; she has not done so.

Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, we have independently reviewed the record for potential error. We are satisfied that defense counsel has fully complied with the responsibilities of counsel and no arguable issue exists. (*Id.* at p. 126; *Wende*, *supra*, 25 Cal.3d at pp. 441-442.)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:

RAPHAEL
J.

MENETREZ
J.

8